**KAPLAN FOX & KILSHEIMER LLP**
Laurence D. King (SBN 206423)
lking@kaplanfox.com
Linda M. Fong (SBN 124232)
lfong@kaplanfox.com
350 Sansome Street, Suite 400
San Francisco, California 94104
Telephone: (415) 772-4700
Facsimile:  (415) 772-4707

**CENTER FOR SCIENCE IN THE PUBLIC INTEREST**
Maia Kats (to be admitted *pro hac vice*)
mkats@cspinet.org
William Thanhauser (to be admitted *pro hac vice*)
wthanhauser@cspinet.org
1220 L Street, NW, Suite 300
Washington, DC  20005
Telephone: (202) 777-8381
Facsimile:  (202) 265-4954

**REESE LLP**
Michael R. Reese (SBN 206773)
mreese@reesellp.com
100 West 93rd Street, 16th Floor
New York, NY  10025
Telephone:  (212) 643-0500
Facsimile:   (212) 253-4272

*Counsel for Plaintiffs and the Proposed Classes*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANCY COE, TORI CASTRO, and PAMELA MIZZI, individually, and on behalf of those similarly situated,<br><br>                    Plaintiffs,<br><br>      v.<br><br>GENERAL MILLS, INC.,<br><br>                    Defendants. | CASE NO.  3:15-cv-5112<br><br>**CLASS ACTION COMPLAINT**<br><br>**Demand for Jury Trial** |

Plaintiffs Nancy Coe, Tori Castro, and Pamela Mizzi (collectively, "Plaintiffs"), on behalf of themselves and others similarly situated bring this Class Action Complaint against General Mills, Inc. ("Defendant" or "General Mills"), and on the basis of personal knowledge, information and belief, and investigation of counsel, allege as follows:

**INTRODUCTION**

1.     Cheerios Protein is a breakfast cereal manufactured, sold and marketed by General Mills.

2.     During the Class Period (as defined below), Plaintiffs purchased Cheerios Protein in California or New York.

3.     General Mills falsely and misleadingly markets Cheerios Protein to children and adults as a high protein, healthful alternative to Cheerios.

4.     In fact, Cheerios Protein has only a smidgen more protein per serving than Cheerios, or 4 grams, which is only 5% of the average American daily protein intake.

5.     Most of that 4 grams is attributable to differences in serving sizes: Cheerios Protein has a bigger, 55 gram serving size, whereas Cheerios uses a 27 gram serving size.

6.     Two hundred calories' worth of Cheerios Protein has a mere 7/10th of a gram more of protein than 200 calories' worth of Cheerios.

7.     Rather than protein, the principal ingredient that distinguishes Cheerios Protein from Cheerios is sugar.  Cheerios Protein has 17 times as much sugar per serving, as Cheerios, which General Mills does not prominently disclose.

8.     General Mills charges a price premium for Cheerios Protein.

9.     Plaintiffs would not have purchased or paid more for Cheerios Protein had they realized that it provides trivially more protein than Cheerios.

10.     Plaintiffs would not have purchased or paid more for Cheerios Protein had they known that it has 17 times as much sugar per serving as Cheerios.

11.     Plaintiffs seek damages and an injunction to stop General Mills's false and misleading marketing practices with regard to Cheerios Protein.

## JURISDICTION

12.     This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and more than two-thirds of the members of the Class reside in states other than the state of which Defendant is a citizen.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events and misrepresentations giving rise to Plaintiffs' claims occurred in this District, and Defendant (1) is authorized to conduct business in this District and has intentionally availed itself of the laws and markets of this District through the promotion, marketing, distribution and sale of its products here, (2) resides in this District, and (3) is subject to personal jurisdiction in this District.

## PARTIES

14.     Plaintiff Nancy Coe ("Coe") is a resident of the City and County of San Francisco, California.  During the Class Period (as defined below), in California, she purchased Cheerios Protein for personal, family, or household use.  The front of the box said "Cheerios Protein" in large, bolded letters.  Coe relied upon this representation, as well as others on the box label and the trust she placed in the Cheerios brand, when she purchased Cheerios Protein.  She believed that consuming Cheerios Protein would deliver substantially more protein than consuming original Cheerios.  She would not have purchased Cheerios Protein had she understood the true nutritional profile of the product.

15.     Plaintiff Tori Castro ("Castro") is a resident of Santa Clara County, California. During the Class Period (as defined below), in California, she purchased Cheerios Protein for personal, family, or household use.  The front of the box said "Cheerios Protein" in large, bolded letters.  Castro relied on this representation, as well as others on the box label and the trust she placed in the Cheerios brand, when she purchased Cheerios Protein.  She believed that consuming Cheerios Protein would deliver substantially more protein than consuming original Cheerios.  She would not have purchased Cheerios Protein had she understood the true nutritional profile of the product.

16.     Plaintiff Pamela Mizzi ("Mizzi") is a resident of Sayville, New York.  During the Class Period (as defined below), in New York, she purchased Cheerios Protein for personal, family, or household use.  The front of the box said "Cheerios Protein" in large, bolded letters. Mizzi relied upon this representation, as well as others on the box label and the trust she placed in the Cheerios brand, when she purchased Cheerios Protein.  She believed that consuming Cheerios Protein would deliver substantially more protein per calorie than consuming original Cheerios. She would not have purchased Cheerios Protein had she understood the true nutritional profile of the product.

17.     Defendant General Mills is incorporated in Delaware, with its principal place of business in Minneapolis, Minnesota.

18.     General Mills is one of the world's largest food companies, producing and marketing food products in the United States and throughout the world.  General Mills sells food products under the "Cheerios" brand name throughout New York, as well as the rest of the United States.

## FACTUAL ALLEGATIONS

19.     Consumer demand for healthier foods has been growing rapidly and manufacturers have been responding[1]—some by changing their ingredients and others merely by marketing their products to appear healthier.

20.     Protein, in particular, is "the hottest … food ingredient trend in the United States."[2]  Fifty-four percent of consumers indicate that they want more protein in their diets.[3]

21.     In this context—that is, with "Americans … buying up almost anything that touts protein,"[4] and with cereal sales otherwise falling—General Mills launched Cheerios Protein in

---

[1] Christopher Doering, *Consumers Demand Healthier Ingredients*, USA TODAY, Apr. 3, 2015, http://goo.gl/IxbIHs.

[2] Stephen Daniells, *'Protein Is the Hottest Functional Food Ingredient Trend in the United States': Packaged Facts*, Food Navigator-USA, http://goo.gl/qSFjHW (last updated Dec. 23, 2014).

[3] *Functional Foods: Key Trends & Developments in Ingredients*, Prepared Foods, http://goo.gl/ncGzzj (last updated Mar. 4, 2015).

[4] Sarah Nassauer, *Cheerios Get a Protein Boost*, Wall St. J., http://goo.gl/LA7aQ7 (last updated May 27, 2014).

March 2014.[5]  It produces and markets Cheerios Protein in two varieties, Oats & Honey and Cinnamon Almond.

22.     Cheerios became "brand of the year" for packaged foods advertising thereafter.[6]

## SPECIFIC MISREPRESENTATIONS, MATERIAL OMISSIONS, AND DECEPTIVE ACTS

### Misleading and Deceptive Name

23.     The Cheerios Protein product name is false and misleading because Cheerios Protein has virtually no more protein than Cheerios, but it implies otherwise.

24.     To increase sales, and guided by consumer trend data, General Mills leveraged the Cheerios reputation as a healthful breakfast cereal to market a cereal with materially higher protein levels.

25.     Plaintiffs reasonably believed that Cheerios Protein offered the known nutritional benefits of Cheerios with the added benefit of substantial additional protein.

26.     General Mills intended for Plaintiffs to be misled by Cheerios Protein by branding it as "offer[ing] the benefits that go along with starting the day with 11g of protein and the great taste of Cheerios that kids and parents already know and love."[7]

27.     General Mills uses Cheerios as a reference point, or comparator, across the entire Cheerios product line.

28.     General Mills names most Cheerios products according to the ingredient that distinguishes them from original Cheerios.  For example, Chocolate Cheerios contains cocoa, whereas Cheerios does not.  Dulce de Leche Cheerios contains caramel syrup, whereas Cheerios does not.  Banana Nut Cheerios contains banana puree, whereas Cheerios does not.  Fruity Cheerios contains pear puree concentrate, whereas Cheerios does not.  Multi Grain Cheerios contains rice, corn bran, sorghum, and millet, whereas Cheerios does not.

---

[5] *See* http://www.blog.generalmills.com/2014/05/a-protein-boost-for-your-breakfast/.

[6] Kacey Culliney, *Cheerios Crowned 'Brand of the Year' in US Packaged Foods TV Advertising*, BakeryAndSnacks.com, http://goo.gl/IVRECn (last updated Jan. 8, 2015).

[7] Kevin Hunt, *A Protein Boost for Your Breakfast*, General Mills, http://goo.gl/p39YN2 (last updated May 28, 2014) (quoting Matt McQuinn, a General Mills senior marketing manager).

29.     In contrast, both Cheerios Protein and Cheerios contain protein, and the protein per calorie (or per gram) content is almost precisely equal, or only incrementally more using different serving sizes.

30.     In-store displays of Cheerios Protein also promote the false belief that Cheerios Protein is Cheerios with substantially more protein, with the large print highlighting the protein content.  *See* Illustration 1.

**Illustration 1**
**Cheerios Protein and Cheerios Display**



31.     But, two hundred calories of Cheerios delivers 6 grams of protein whereas 200 calories of Cheerios Protein (Oats & Honey) delivers only 6.7 grams, and 200 calories of Cheerios Protein (Cinnamon Almond) only 6.4 grams.  *See* Illustration 2.

32.     So too, making use of the larger serving size used for Cheerios Protein, the protein differential is still immaterial—a difference of 5% of the average daily intake.  The serving size for Cheerios Protein is 55 grams, whereas the serving size for Cheerios is 28 grams.  *Id.*

**Illustration 2**
**Chart of Protein Content**

| Cereal | Nutrition Facts Panel (NFP) serving size | Calories per NFP serving | Protein per NFP serving size | Protein per 200 calorie serving (without milk) |
|---|---|---|---|---|
| Cheerios | 1 cup | 100 | 3 grams | 6 grams |
| Cheerios Protein (Oats & Honey) | 1¼ cup | 210 | 7 | 6.7 grams |

| Cereal | Nutrition Facts Panel (NFP) serving size | Calories per NFP serving | Protein per NFP serving size | Protein per 200 calorie serving (without milk) |
|---|---|---|---|---|
| Cheerios Protein (Cinnamon Almond) | 1¼ cup | 220 | 7 | 6.4 grams |

33.    While the Cheerios Protein box front prominently claims that Cheerios Protein delivers 11 grams of protein per serving, 4 of those grams derive from supplementation with half a cup of skim milk, and not from the cereal itself.

**Misleading and Deceptive Omission
of the Key Differentiating Ingredient:  Added Sugar**

34.    General Mills falsely and misleadingly markets Cheerios Protein as having both the same known benefits as Cheerios and substantially more protein than Cheerios.

35.    General Mills, in its naming and marketing of Cheerios Protein, misleadingly and deceptively omits any clear and conspicuous indication that the product is laden with added sugar. Cheerios Protein contains 16-17 times as much sugar per serving as Cheerios.  *See* Illustration 3.

**Illustration 3
Chart of Sugar Content**

| Cereal | NFP serving size | Sugar per NFP serving size | Calories per NFP serving size | % of AHA's recommended daily sugar limit for women (6 tsp)[8] |
|---|---|---|---|---|
| Cheerios | 1 cup | 1 gram | 100 | 4% |
| Cheerios Protein (Oats & Honey) | 1¼ cup | 17 grams | 210 | 68.3% |
| Cheerios Protein (Cinnamon Almond) | 1¼ cup | 16 grams | 220 | 61.7% |

36.    The FDA recognizes that such product names are misleading:

---

[8] The American Heart Association (AHA) recommends that adult women and men consume no more than six (approximately 24 grams) and nine teaspoons (approximately 36 grams) of added sugar per day, respectively.  *Added Sugars*, Am. Heart Ass'n, http://goo.gl/AUDI8A. In 1995, the U.S. Dietary Guidelines proposed a limit of approximately ten teaspoons per 2,000 calories, and, in 2015, recommended a limit of approximately 10% of calories, or 50 grams (approximately 12 teaspoons) per 2,000 calories.  U.S. Dep't of Agric., Scientific Report of the 2015 Dietary Guidelines Advisory Committee 9 (2015), *available at* http://goo.gl/IQJLdb.  The World Health Organization (WHO) sets a target of 10%, but has a preferred-for-health-purposes target of 5%. WHO, Sugar Intake for Adults and Children 4 (2015), http://goo.gl/1plXPf.

> The labeling of a food which contains two or more ingredients may be misleading by reason (among other reasons) of the designation of such food in such labeling by a name which includes or suggests the name of one or more but not all such ingredients, even though the names of all such ingredients are stated elsewhere in the labeling.

*See* 21 C.F.R. § 101.18(b).

37.     Cheerios Protein contains approximately 2.5 grams of sugar per gram of protein. Of the 55 grams in a serving of Cheerios Protein, 16 or 17 grams is sugar, whereas only 7 grams is protein.  Put another way, Cheerios Protein is approximately 30% sugar but only 13% protein.

38.     Consumers interested in the amount of protein they consume are likely averse to consuming excessive amounts of added sugar because excessive sugar in the diet markedly increases the risk and severity of type-2 diabetes, heart damage, obesity, and dental caries.

39.     Unlike if it were named Sugar Frosted Cheerios, Cheerios Protein does not reference sugar in its name, despite its being the key differentiating ingredient between it and Cheerios, as well as being a characterizing ingredient under 21 C.F.R. § 102.5.

### Misleading and Deceptive "GREAT START" Labeling

40.     General Mills deceptively claims that Cheerios Protein is "a great start to your day," that it will "start your school day right," and that it will "kick-start" your day.

41.     In conjunction with these claims, the Cheerios Protein box contains a series of appealing photographic images depicting healthy and successful kids and parents.  *See* Illustrations 4–6.

**Illustrations 4–6**
**Great Start Claims and Photographic Imagery**



CLASS ACTION COMPLAINT





42.     These claims and images are part of a sophisticated marketing campaign to encourage parents to purchase Cheerios Protein for their children; and the sweet taste of the product helps ensure that children will eat the product.

43.     Parents are susceptible to images of happy families and healthy, active and blossoming children.

44.     These claims and images are also part of a sophisticated marketing campaign to encourage children to ask their parents for Cheerios Protein over other cereals.

45.     Children may like the taste of sugary cereals but do not understand the health consequences of consuming such cereals.  The Federal Trade Commission, Centers for Disease

Control and Prevention, and United States Department of Agriculture, all recommend that children consume no more than 13 grams of added sugar per individual food serving, warning that added sugars can contribute to weight gain by providing excess calories or by diluting the nutrient density of the total diet.

46.     *Each* serving of Cheerios Protein *exceeds* these recommended limits on added sugar, containing 16 to 17 grams of added sugar per serving—or, 3 to 4 grams more added sugar than the amount recommended by these agencies.  Considering the average serving size over-pour of 132% for Cheerios Protein, moreover, the number of grams by which the recommendations is exceeded is often more than double that figure.[9]

47.     General Mills knows that children's preferences, desires, and beliefs can influence their parents' purchasing decisions.

48.     General Mills's claims are false and misleading because processed foods containing about 30% of sugar by weight, or approximately four teaspoons of sugar per serving, are not healthful, do not provide "a great start to your day," and do not enable kids to "start [their] school day right," or "kick-start [their] day."

49.     Instead, added sugar in processed foods has substantially contributed to ballooning rates of type-2 diabetes, obesity, and other diseases, leading the American Heart Association, World Health Organization, and the U.S. Department of Agriculture to call for a large reduction in the amount of sugar consumed by most Americans.

50.     The labeling and marketing of Cheerios Protein does not enable consumers to understand readily the significance of the respective amounts of protein and sugar (including sugar syrup) contained in the product in the context of a total daily diet.

51.     General Mills's implied claims of healthfulness on the Cheerios Protein label constitute misbranding.

---

[9] Deborah Pike Olsen, *Cereal Portion Control Matters*, Consumer Reports, http://goo.gl/AXvby5 (Dec. 11, 2014).

**False and Misleading "Fuel Up" Advertising**

52. General Mills's television and Internet advertising of Cheerios Protein is misleading for the same reasons. These advertisements deceptively link children eating Cheerios Protein to children performing well in school.

53. For example, in one ad, celebrity NASCAR driver Austin Dillon and team, swathed in Cheerios Protein garb, strap a child into a Cheerios Protein stock car, race him to school where he is fed Cheerios Protein pit-stop style, and then leave him "fueled up" and ready to learn. *See* Illustrations 7–11.

**Illustrations 7–11**
**Cheerios Protein Fuel Up! Advertisement**





**CLASS ACTION COMPLAINT**

1
2
3
4
5
6
7
8



9
10
11
12
13
14
15
16
17



18
19
20
21
22
23
24
25
26



27      54.     General Mills misleads consumers by advertising Cheerios Protein as a nutritious

28   breakfast that will help children succeed at school when, in fact, a diet of foods like Cheerios

Protein sets children on course for health adversities including, but not limited to, obesity, type-2 diabetes, and/or dental caries.

### Reliance and Economic Injury

55.     When purchasing Cheerios Protein, Plaintiffs sought a product with a materially higher level of protein than Cheerios.

56.     When purchasing Cheerios Protein, Plaintiffs sought a healthful product that would provide a nutritious start to the day.

57.     Plaintiffs read and relied on General Mills's false and misleading product name (*i.e.*, Cheerios Protein) and misleading claims in its labeling and advertising of the product.

58.     Plaintiffs also saw and relied on images on the Cheerios Protein box, which misleadingly depict healthy, high-performing children and families, and wholesome-looking honey jars (though honey is a negligible ingredient). These images appeared in stores (on boxes), on television, and on the Internet.

59.     Plaintiffs purchased Cheerios Protein, and paid more for it than they would have paid for Cheerios, believing the product had qualities they sought (*e.g.*, healthfulness, a high amount of protein relative to Cheerios) based on the misleading labeling and marketing; but, the product was unsatisfactory to them for the reasons described.

60.     Cheerios Protein costs on average about 5 cents more per ounce at stores like Walmart and Safeway, or 10 cents more per serving.

61.     Plaintiffs paid more for Cheerios Protein than they would have had they not been misled by the false and misleading labeling and advertising complained of herein. Plaintiffs would not have purchased Cheerios Protein absent these misrepresentations.

62.     For these reasons, the Cheerios Protein products were worth less than what Plaintiffs paid for them.

63.     Plaintiffs purchased Cheerios Protein based on the false and misleading representations described herein.

64.     Instead of receiving products that have materially enhanced protein, or that were more healthful, Plaintiffs received products that were protein-equivalent, and/or immaterially different, and more sugar-laden than represented and reasonably understood to be.

65.     Plaintiffs lost money as a result of General Mills's deception in that Plaintiffs did not receive what they paid for.

66.     Plaintiffs altered their position to their detriment and suffered damages in an amount equal to the amount they paid for the Cheerios Protein.

67.     By engaging in its misleading and deceptive marketing, sales and pricing scheme, General Mills reaped and continues to reap increased sales and profits.

68.     General Mills is familiar with marketing research and knows that many of its customers purchase Cheerios Protein because they are health conscious and believe that the product is materially higher in protein than Cheerios (or, effectively a fortified version of Cheerios).

69.     General Mills knows that the protein content and overall healthfulness of a product are material to consumers' decision to purchase Cheerios Protein.

70.     General Mills deliberately cultivates these misperceptions through its marketing, sales and pricing scheme.  Indeed, General Mills relies and capitalizes on consumer misconceptions about Cheerios Protein.

## CLASS ACTION ALLEGATIONS

71.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.  The class that Plaintiffs Coe and Castro seek to represent (the "California Class") is composed of and defined as follows:

> All persons residing in California who have purchased Cheerios Protein for their own use (which includes feeding their families), and not for resale, since March 1, 2014.  Excluded from the Class are: governmental entities; Defendant; any entity in which Defendant has a controlling interest; Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns; and, any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

72.     The class that Plaintiff Mizzi seeks to represent (the "New York Class") is composed of and defined as follows:

All persons residing in New York who have purchased Cheerios Protein for their own use (which includes feeding their families), and not for resale, since March 1, 2014. Excluded from the Class are: governmental entities; Defendant; any entity in which Defendant has a controlling interest; Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns; and, any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

73.     For the purposes of this Complaint, the term "Class Members" refers collectively to all members of both the New York Class and California Class, including the named Plaintiffs for each.

74.     This action is maintainable as a class action under Federal Rules of Civil Procedure Rule 23(a), and (b)(2) and (b)(3).

75.     **Numerosity**.  The Classes each consist of many thousands of persons throughout the State of California and the State of New York.  Each Class is so numerous that joinder of all members is impracticable, and the disposition of their claims in a class action will benefit the parties and the Court.

76.     **Commonality and Predominance**.  The questions of law and fact common to each Class have the capacity to generate common answers that will drive resolution of this action. They predominate over any questions affecting only individual class members.  Common questions of law and fact include, but are not limited to, the following:

a.     Whether General Mills contributed to, committed, or is responsible for the conduct alleged herein;

b.     Whether General Mills's conduct constitutes the violations of law alleged herein;

c.     Whether General Mills acted willfully, recklessly, negligently, or with gross negligence in the violations of laws alleged herein;

d.     Whether Class Members are entitled to injunctive relief; and

e.     Whether Class Members are entitled to restitution and damages.

77.     By seeing the name, labeling, display and marketing of Cheerios Protein, and by purchasing Cheerios Protein, all Class Members were subject to the same wrongful conduct.

78.     Absent General Mills's material deceptions, misstatements and omissions, Plaintiffs and other Class Members would not have purchased Cheerios Protein.

79.     **Typicality**.  Plaintiffs' claims are typical of the claims of the Classes, respectively, because they all purchased Cheerios Protein products and were injured thereby.  The claims of Plaintiffs and other Class Members are based on the same legal theories and arise from the same false, misleading and unlawful conduct.

80.     **Adequacy**.  Plaintiffs are adequate representatives of each respective Class because their interests do not conflict with those of other Class Members.  Each Class Member is entitled to damages reflecting a similar and discrete purchase or purchases that each Class Member made.  Plaintiffs have retained competent and experienced class action counsel, who intend to prosecute this action vigorously.  The Class Members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

81.     **Superiority**.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because joinder of all Class Members is impracticable.  The amount at stake for each consumer, while significant, is such that individual litigation would be inefficient and cost-prohibitive.  Additionally, adjudication of this controversy as a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the claims asserted herein.  Plaintiffs anticipate no difficulty in the management of this action as a class action.

82.     This Court should certify a class under Rule 23(b)(2) and (b)(3) because Defendant has acted or refused to act on grounds that apply generally to both Classes, by making illegal, unfair, misleading and deceptive representations and omissions regarding Cheerios Protein.

83.     **Notice to the Class**.  Plaintiffs anticipate that this Court can direct notice to the Classes, to be effectuated by publication in major media outlets and the Internet.

**FIRST CLAIM**
**(ON BEHALF OF THE CALIFORNIA CLASS)**
**(Violation of California Business & Professions Code §§ 17200 *et seq.* –**
**Unlawful Conduct Prong of the UCL**)

84.     Plaintiffs Coe and Castro incorporate by reference all allegations contained in the complaint as if fully set forth herein.

85.     California Business & Professions Code section 17200 ("UCL") prohibits any "unlawful, unfair or fraudulent business act or practice."

86.     The acts, omissions, misrepresentations, practices, and non-disclosures of General Mills, as alleged herein, constitute "unlawful" business acts and practices in that they violate the Federal Food, Drug, and Cosmetic Act ("FFDCA") and its implementing regulations, including, at least, the following sections:

a.     21 U.S.C. § 343, which deems food misbranded when the label contains a statement that is "false or misleading in any particular," with "misleading" defined to "take[] into account (among other things) not only representations made or suggested by statement, word, design, device, or any combination thereof, but also the extent to which the labeling or advertising fails to reveal facts material";

b.     21 U.S.C. § 321(n), which states the nature of a false and misleading advertisement;

c.     21 C.F.R. § 101.18(b), which prohibits true statements about ingredients that are misleading in light of the presence of other ingredients; and

d.     21 C.F.R. § 102.5(c), which prohibits the naming of foods so as to create an erroneous impression about the presence or absence of ingredient(s) or component(s) therein.

87.     General Mills's conduct is further "unlawful" because it violates the California False Advertising Law ("FAL") and the Consumer Legal Remedies Act ("CLRA"), as discussed in the claims below.

88.     General Mills's conduct also violates the California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Saf. Code section 109875, *et seq.* ("Sherman Law"), including, at least, the following sections:

a.      Section 110100 (adopting all FDA regulations as state regulations);

b.      Section 110290 ("In determining whether the labeling or advertisement of a food … is misleading, all representations made or suggested by statement, word, design, device, sound, or any combination of these, shall be taken into account.  The extent that the labeling or advertising fails to reveal facts concerning the food … or consequences of customary use of the food … shall also be considered.");

c.      Section 110390 ("It is unlawful for any person to disseminate any false advertisement of any food…. An advertisement is false if it is false or misleading in any particular.");

d.      Section 110395 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food … that is falsely advertised.");

e.      Section 110398 ("It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded.");

f.      Section 110400 ("It is unlawful for any person to receive in commerce any food … that is falsely advertised or to deliver or proffer for delivery any such food…."); and

g.      Section 110660 ("Any food is misbranded if its labeling is false or misleading in any particular.").

89.      Each of the challenged statements made and actions taken by General Mills violates the FFDCA, the CLRA, the FAL, and the Sherman Law, and therefore violates the "unlawful" prong of the UCL.

90.      General Mills leveraged its deception to induce Plaintiffs Coe and Castro and members of the California Class to purchase products that were of lesser value and quality than advertised.

91.      General Mills's deceptive advertising caused Plaintiffs Coe and Castro and members of the California Class to suffer injury in fact and to lose money or property, as it denied them the benefit of the bargain when they decided to purchase Cheerios Protein over other products that are less expensive, and contain virtually the same (or immaterially different) amount of protein and/or less added sugar.  Had Plaintiffs Coe and Castro and the members of the

California Class been aware of General Mills's false and misleading advertising tactics, they would not have purchased Cheerios Protein at all, or would have paid less than what they did for it.

92.     In accordance with California Business & Professions Code section 17203, Plaintiffs Coe and Castro seek an order enjoining General Mills from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

93.     Plaintiffs Coe and Castro also seek an order for the disgorgement and restitution of all monies from the sale of Cheerios Protein products that were unjustly acquired through act of unlawful, unfair and/or fraudulent competition.

### SECOND CLAIM
### (ON BEHALF OF THE CALIFORNIA CLASS)
**(Violation of California Business & Professions Code §§ 17200, *et seq.* – Unfair and Fraudulent Conduct Prong of the UCL)**

94.     Plaintiffs Coe and Castro incorporate by reference all of the allegations of the preceding paragraphs as if fully set forth herein.

95.     California Business & Professions Code section 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

96.     The false and misleading labeling of Cheerios Protein, as alleged herein, constitutes "unfair" business acts and practices because such conduct is immoral, unscrupulous, and offends public policy.  Further, the gravity of General Mills's conduct outweighs any conceivable benefit of such conduct.

97.     The acts, omissions, misrepresentations, practices, and non-disclosures of General Mills as alleged herein constitute "fraudulent" business acts and practices, because General Mills's conduct is false and misleading to Plaintiffs and members of the California Class.

98.     General Mills's labeling and marketing of Cheerios Protein is likely to deceive Class Members about the protein content, overall healthfulness, and/or nutritional value of Cheerios Protein.

99. General Mills either knew or reasonably should have known that the claims on the labels of Cheerios Protein were likely to deceive consumers.

100. In accordance with California Business & Professions Code section 17203, Plaintiffs Coe and Castro seek an order enjoining General Mills from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

101. Plaintiffs Coe and Castro also seek an order for the disgorgement and restitution of all monies from the sale of Cheerios Protein products that were unjustly acquired through act of unlawful, unfair and/or fraudulent competition.

### THIRD CLAIM
### (ON BEHALF OF THE CALIFORNIA CLASS)
#### (Violation of California Business & Professions Code §§ 17500, *et seq.* – False and Misleading Advertising)

102. Plaintiffs Coe and Castro incorporate by reference all allegations contained in the complaint as if fully set forth herein.

103. California False Advertising Law (Cal. Business & Professions Code sections 17500 and 17508) prohibits "mak[ing] any false or misleading advertising claim."

104. As alleged herein, General Mills, in its labeling of Cheerios Protein, makes "false [and] misleading advertising claim[s]," as it deceives consumers as to the relative protein content, sugar content, overall healthfulness, and nutritional value of Cheerios Protein.

105. In reliance on these false and misleading advertising claims, Plaintiffs Coe and Castro and members of the California Class purchased and used Cheerios Protein without the knowledge that Cheerios Protein did not contain more or materially more protein than Cheerios, and was not a healthful breakfast and start to the day.

106. General Mills knew or should have known that its labeling and marketing was likely to deceive consumers.

107. As a result, Plaintiff Coe, Plaintiff Castro, and the California Class are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which General Mills was unjustly enriched.

**FOURTH CLAIM**
**(ON BEHALF OF THE CALIFORNIA CLASS)**
**(Violation of California Civil Code §§ 1750, *et seq.* –**
**Consumers Legal Remedies Act)**

108.   Plaintiffs Coe and Castro incorporate by reference all allegations contained in the complaint as if fully set forth herein.

109.   The CLRA adopts a statutory scheme prohibiting various deceptive practices in connection with the conduct of a business providing goods, property, or services primarily for personal, family, or household purposes.

110.   General Mills's policies, acts, and practices were designed to, and did, result in the purchase and use of Cheerios Protein primarily for personal, family, or household purposes, and violated and continue to violate the following sections of the CLRA:

     a.   Section 1770(a)(2), which prohibits representing that goods have a particular composition or contents that they do not have;

     b.   Section 1770(a)(5), which prohibits representing that goods have characteristics, uses, or benefits that they do not have;

     c.   Section 1770(a)(7), which prohibits representing that goods are of a particular standard, quality, or grade if they are of another;

     d.   Section 1770(a)(9), which prohibits advertising goods with intent not to sell them as advertised; and

     e.   Section 1770(a)(16), which prohibits representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

111.   As a result, in accordance with Cal. Civ. Code section 1780(a)(2), Plaintiffs Coe and Castro and members of the California Class have suffered irreparable harm and are entitled to equitable relief in the form of an order:

     a.   Enjoining General Mills from continuing to engage in the deceptive practices described above;

     b.   Requiring General Mills to make full restitution of all monies wrongfully obtained as a result of the conduct described above;

1          c.       Requiring General Mills to disgorge all ill-gotten gains flowing from the

2     conduct described above;

3          d.       Requiring General Mills to provide public notice of the true nature of

4     Cheerios Protein; and

5          e.       Enjoining General Mills from such deceptive business practices in the

6     future.

7          112.    Pursuant to Section 1782 of the CLRA, Plaintiffs are notifying General Mills in

8     writing of the particular violations of Section 1770 of the CLRA (the Notice) and are demanding,

9     among other actions, that Defendant cease marketing Cheerios Protein as set forth in detail above.

10    If Defendant fails to respond to Plaintiffs' demand within 30 days of the Notice, pursuant to

11    Section 1782 of the CLRA, Plaintiffs will amend this Complaint to request, in addition to the

12    above relief, statutory damages, actual damages, punitive damages, and interest and attorneys'

13    fees.

14                              **FIFTH CLAIM**
                  **(ON BEHALF OF THE NEW YORK CLASS)**
15                **(Violation of New York General Business Law § 349)**

16        113.    Plaintiff Mizzi incorporates by reference all of the allegations contained in this

17    Complaint as if fully set forth herein.

18        114.    New York General Business Law section 349 prohibits "deceptive acts or practices

19    in the conduct of any business, trade or commerce or in the furnishing of any service."

20        115.    General Mills's labeling and marketing of Cheerios Protein, as alleged herein,

21    constitute "deceptive" acts and practices, as such conduct misled Plaintiff Mizzi and other

22    members of the New York Class, as to the relative protein content, overall healthfulness, and

23    nutritional value of Cheerios Protein.

24        116.    In accordance with subsection (h) of N.Y. Gen. Bus. Law section 349, Plaintiff

25    Mizzi seeks an order enjoining General Mills from continuing these unlawful deceptive acts and

26    practices.  Absent enjoining these unlawful deceptive acts and practices, General Mills will

27    continue to falsely and misleadingly advertise the relative protein per calorie content, overall

28

healthfulness, and nutritional value of Cheerios Protein, and, in doing so, irreparably harm each of the New York Class members.

117.    As a consequence of General Mills's deceptive acts and practices, Plaintiff Mizzi and other members of the New York Class suffered an ascertainable loss of monies.  By reasons of the foregoing, under subsection (h) of N.Y. Gen. Bus. Law section 349, Plaintiff Mizzi and other members of the New York Class also seek actual damages and punitive damages.

**SIXTH CLAIM**
**(ON BEHALF OF THE NEW YORK CLASS)**
**(Violation of New York General Business Law § 350)**

118.    Plaintiff Mizzi incorporates by reference all of the allegations of the preceding paragraphs as if fully set forth herein.

119.    New York General Business Law section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service."

120.    New York General Business Law section 350-a defines "false advertising" as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect."  The section also provides that advertising can be false by omission, as it further defines "false advertising" to include "advertising [that] fails to reveal facts material in the light of such representations with respect to the commodity … to which the advertising relates."

121.    General Mills's labeling, marketing, and advertising of Cheerios Protein, as alleged herein, are "misleading in a material respect," and thus "false advertising," as they falsely represent Cheerios Protein as having substantially more protein than original Cheerios, and as being healthful.

122.    Plaintiff Mizzi seeks an order enjoining General Mills from continuing this false advertising.  Absent enjoining this false advertising, General Mills will continue to mislead Plaintiff Mizzi, other members of the New York Class, as to the relative protein per calorie content, overall healthfulness, and nutritional value of Cheerios Protein, and, in doing so, irreparably harm each of the New York Class members.

123.     As a direct and proximate result of General Mills's violation of New York General Business Law section 350, Plaintiff Mizzi and other members of the New York Class have also suffered an ascertainable loss of monies.  By reasons of the foregoing, Plaintiff Mizzi and other members of the New York Class also seek actual damages and punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and members of the proposed Classes herein, pray for judgment and relief on all of their legal claims as follows:

A.     An order certifying that the action may be maintained as a class action and requiring General Mills to bear the cost of class notice;

B.     An order enjoining General Mills from pursuing the policies, acts and practices complained of herein;

C.     An order compelling General Mills to destroy all misleading and deceptive advertising materials and packaging;

D.     An order requiring General Mills to pay restitution to Plaintiffs and all members of the Class;

E.     An order requiring General Mills to pay actual damages to Plaintiffs and all members of the Class;

F.     Punitive damages;

G.     Pre-judgment interest from the date of filing suit;

H.     Costs, expenses, and reasonable attorneys' fees; and

I.     Such other and further relief as the Court may deem necessary or appropriate.

1

## JURY TRIAL DEMAND

2
    Plaintiffs demand a jury trial on all causes of action so triable.

3
Dated:  November 9, 2015      **KAPLAN FOX & KILSHEIMER LLP**

4
    By:   /s/ *Laurence D. King*

5
                  Laurence D. King

6
Laurence D. King (SBN 206423)
lking@kaplanfox.com
Linda M. Fong (SBN 124232)

7
lfong@kaplanfox.com
350 Sansome Street, Suite 400

8
San Francisco, California 94104
Telephone: (415) 772-4700

9
Facsimile:  (415) 772-4707

10
**CENTER FOR SCIENCE IN THE PUBLIC INTEREST**
Maia Kats (to be admitted *pro hac vice*)

11
mkats@cspinet.org
William Thanhauser (to be admitted *pro hac vice*)

12
wthanhauser@cspinet.org
1220 L Street, NW, Suite 300

13
Washington, DC  20005
Telephone: (202) 777-8381

14
Facsimile:  (202) 265-4954

15
**REESE LLP**
Michael R. Reese (SBN 206773)

16
mreese@reesellp.com
100 West 93rd Street, 16th Floor

17
New York, NY  10025
Telephone:  (212) 643-0500

18
Facsimile:  (212) 253-4272

19
*Counsel for Plaintiffs and the Proposed Classes*

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT