UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANCY COE, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>GENERAL MILLS, INC.,<br><br>　　　　Defendant. | Case No. 15-cv-05112-TEH<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** |

This matter came before the Court on July 18, 2016, on Defendant General Mills, Inc.'s motion to dismiss. After carefully considering the parties' written and oral arguments, the Court GRANTS IN PART and DENIES IN PART the motion for the reasons discussed below.

**BACKGROUND**

Plaintiffs Nancy Coe, Tori Castro, and Pamela Mizzi filed this putative class action against Defendant General Mills, Inc. to challenge the labeling and advertising of its Cheerios Protein product. They contend that the name "Cheerios Protein" is misleading because it implies that the product is essentially the same as Cheerios, only with added protein. While Plaintiffs acknowledge that Cheerios Protein does have more protein than regular Cheerios (7 grams per serving versus 3 grams per serving), they contend that the amount of additional protein is not material, particularly considering the larger serving size and calories per serving of Cheerios Protein. Based on the Nutrition Facts panels of both products – the accuracy of which Plaintiffs do not challenge – Plaintiffs calculate that 200 calories of Cheerios contains 6 grams of protein, whereas 200 grams of Cheerios Protein contains 6.4 or 6.7 grams of protein, depending on the flavor (Oats & Honey or Cinnamon Almond, respectively).

In addition, Plaintiffs argue that the "Cheerios Protein" name is misleading because it says nothing about added sugar. Whereas a single serving of Cheerios contains only 1 gram of sugar, a single serving of Cheerios Protein contains 16 or 17 grams of sugar (Cinnamon Almond or Oats & Honey, respectively).

Plaintiffs also challenge certain statements on the label as false or misleading: that the product provides "a great start to your day," enables you to "start your school day right," and allows you to "kick-start your day." Compl. ¶ 40. Similarly, Plaintiffs challenge as false or misleading a "Fuel Up" advertisement, viewable at https://www.youtube.com/watch?v=EWFfBSeuTiI, in which a NASCAR driver picks up a child and races him to school, where "he is fed Cheerios Protein pit-stop style." *Id.* ¶ 53.

Plaintiffs seek relief for both California and New York classes of consumers. The first four claims are asserted under California laws that prohibit "unlawful, unfair or fraudulent" business acts or practices, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("Unfair Competition Law" or "UCL"); false or misleading advertising, Cal. Bus. & Prof. Code §§ 17500 *et seq.*; and deceptive business practices, Cal. Civ. Code §§ 1750 *et seq.* ("Consumers Legal Remedies Act"). The remaining two claims are asserted under New York laws that prohibit deceptive acts or practices and false advertising. N.Y. Gen. Bus. Law §§ 349-50. Defendant seeks dismissal of the entire complaint.

**LEGAL STANDARD**

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when a plaintiff's allegations fail "to state a claim upon which relief can be granted." To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not equate to probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In ruling on a motion to dismiss, courts must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007). However, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

### I. Preemption

Defendant first argues that Plaintiffs' claims are expressly preempted by the federal Nutrition Labeling and Education Act ("NLEA" or "Act"). The NLEA "established uniform food labeling requirements, including the familiar and ubiquitous Nutrition Facts Panel found on most food packages." *Lilly v. ConAgra Foods, Inc.*, 743 F.3d 662, 664 (9th Cir. 2014). The Act's express preemption clause provides that "no State or political subdivision of a State may directly or indirectly establish . . . any requirement for the labeling of food . . . that is not identical to" certain federal requirements, including nutrition information claims under 21 U.S.C. § 343(q) and nutrition levels and health-related claims under 21 U.S.C. § 343(r). 21 U.S.C. § 343-1(a).

Plaintiffs contend that their claims are not preempted because they "are identical to the federal labeling requirements." *Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015). Specifically, Plaintiffs contend that the labeling of Cheerios Protein violates two federal regulations – 21 C.F.R. § 101.18(b) and 21 C.F.R. § 102.5(c) – as well as 21 U.S.C. § 343(a)(1), which provides that a food is "misbranded" if its "labeling is false or misleading in any particular." Compl. ¶ 86.[1]  The Court considers each contention in turn.

---

[1] The complaint refers generally to 21 U.S.C. § 343, but the quoted language is from § 343(a)(1). The complaint also cites 21 U.S.C. § 321(n), but that section only describes what must be considered to determine whether a label is "false or misleading," as prohibited by § 343(a)(1) and other statutes.

3

### A.    21 C.F.R. § 101.18(b)

First, 21 C.F.R. § 101.18(b) provides that "the labeling of a food which contains two or more ingredients may be misleading by reason (among other reasons) of the designation of such food in such labeling by a name which includes or suggests the name of one or more but not all such ingredients, even though the names of all such ingredients are stated elsewhere in the labeling."  Plaintiffs argue that the name "Cheerios Protein" violates this regulation because it includes two ingredients, Cheerios and protein, but excludes sugar.  They analogize this case to a claim that calling a product "vitaminwater" is misleading because it implies that the product contains only two ingredients, vitamins and water, when it also contained sugar.  Such a claim was found to be valid and not preempted in *Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG)(RML), 2010 WL 2925955, at *12-13 (E.D.N.Y. July 21, 2010).

However, Plaintiffs cite no authority to support the proposition that Cheerios is an "ingredient," and the Court finds none.  At oral argument, Plaintiffs' counsel offered that "we just have to rely on common sense," and that Cheerios should be considered an "ingredient" under the regulations because it is listed as an "ingredient" in recipes contained on Defendant's website.  Tr. at 21:11-22.  Putting aside the question of whether such evidence can even be considered at this stage of the proceedings, the Court is not persuaded by this analogy.  Whether something is an "ingredient" for purposes of a recipe is a separate question from whether it is an "ingredient" in the context of food labeling.  Adopting Plaintiffs' position would lead to the absurd result that a regular box of Cheerios would only need to list "Cheerios" in its list of ingredients.  In the absence of any contrary authority, the Court therefore concludes that Cheerios is not an "ingredient," and the name "Cheerios Protein" is not regulated by 21 C.F.R. § 101.18(b).

### B.    21 C.F.R. § 102.5(c)

Second, 21 C.F.R. § 102.5(c) provides that "[t]he common or usual name of a food shall include a statement of the presence or absence of any characterizing ingredient(s) or component(s) . . . when the presence or absence of such ingredient(s) or component(s) in

4

the food has a material bearing on price or consumer acceptance." Plaintiffs argue that "Cheerios Protein" is the product's common or usual name, and that it violates § 102.5(c) because it fails to indicate any sugar, which would be material to a consumer's acceptance of the product. Defendant, on the other hand, contends that the common or usual name of the products at issue are "Sweetened Whole Grain Oat Cereal with Crunchy Oat Granola Clusters and Real Honey" and "Sweetened Whole Grain Corn and Oat Cereal with Crunchy Almond Granola Clusters and Real Cinnamon," both of which appear on the front of the box in the lower left corner, in smaller type than "Cheerios Protein."

Neither party has cited any cases where a court has considered whether a brand name is or can be a product's common or usual name. However, it would be reasonable to infer from regulations defining specific common or usual names that the term "common or usual name" is meant to refer to a generic descriptive term rather than a brand name. *E.g.*, 21 C.F.R. § 102.23 ("peanut spread"); 21 C.F.R. § 102.26 ("frozen chicken dinner" or "frozen heat and serve beef dinner"); 21 C.F.R. § 102.41 ("potato chips made from dried potatoes"). Declining to find that the "Cheerios Protein" brand name is also its common or usual name would also comport with the requirements that a common or usual name must "accurately identify or describe, in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients," and must be "uniform among all identical or similar products." 21 C.F.R. § 102.5(a). It would be nonsensical, for example, to refer to all whole grain oat cereals, which are similar to Cheerios, as "Cheerios."

Plaintiffs argue that their position is supported by 21 C.F.R. § 101.3(a), which requires the "principal display panel of a food in package form [to] bear as one of its principal features a statement of the identity of the commodity." This argument is unconvincing. First, the "statement of identity" is not necessarily the common or usual name; it may be the "common or usual name of the food; or, in the absence thereof . . . [a]n appropriately descriptive term, or when the nature of the food is obvious, a fanciful name commonly used by the public for such food." 21 C.F.R. § 101.3(b)(2)-(3). Second, the regulation does not purport to define how to determine a product's common or usual name.

5

As the FDA warning letter cited by Plaintiffs demonstrates, placing words in a larger or more prominent type does not make those words the product's statement of identity. FDA Warning Letter to Cytosport, Inc. (June 29, 2011), http://www.fda.gov/iceci/ enforcementactions/warningletters/2011/ucm261684.htm (noting that "[t]he actual statements of identity, 'Protein Nutrition Shake' and 'Nutritional Shake' are in significantly smaller and less prominent type than the words 'MUSCLE MILK' on these product labels"). The Court therefore concludes that 21 C.F.R. § 102.5(c) does not apply to "Cheerios Protein" because that is not the product's common or usual name.

### C. 21 U.S.C. § 343(a)(1)

Plaintiffs' final argument, however, has merit. Under 21 U.S.C. § 343(a)(1), a food is "misbranded" if its "labeling is false or misleading in any particular."[2] This catch-all prohibition against false or misleading labeling is:

> a more general obligation to refrain from deceptive conduct. By its terms, the express preemption provision does not bar the enforcement of state laws imposing requirements of *that* type – that is, a state-law mirror of the requirement in § 343(a)(1) addressing false or misleading labels. Fairly but narrowly construed, § 343-1(a) does not prohibit Plaintiffs from asserting a claim premised on a violation of § 343(a)(1).

*Reynolds v. Wal-Mart Stores, Inc.*, No. 4:14CV381-MW/CAS, 2015 WL 1879615, at *12 (N.D. Fla. Apr. 23, 2015). However, "[t]he ability to bring such a claim is not unlimited," *id.*, and Defendant correctly argues that a claim under § 343(a)(1) would be barred if the challenged aspects of the label complied with a specific federal regulation. "[I]f there is compliance with a specific requirement, then that aspect is not false or misleading under the catch-all provision, § 343(a)(1)." *Id.*; *see also Henry v. Gerber Prods. Co.*, No. 3:15-

---

[2] *See also* 21 U.S.C. § 321(n) ("If an article is alleged to be misbranded because the labeling or advertising is misleading, then in determining whether the labeling or advertising is misleading there shall be taken into account (among other things) not only representations made or suggested by statement, word, design, device, or any combination thereof, but also the extent to which the labeling or advertising fails to reveal facts material in the light of such representations or material with respect to consequences which may result from the use of the article to which the labeling or advertising relates under the conditions of use prescribed in the labeling or advertising thereof or under such conditions of use as are customary or usual.").

6

cv-02201-HZ, 2016 WL 1589900, at *7-8 (D. Or. Apr. 18, 2016) (holding that a plaintiff could not bring a claim based on § 343(a) where she conceded that the labels "are 'technically accurate' and comply with 'the regulations' disclosure requirements.'" (citations omitted)). That is, a statement cannot be "false or misleading" under § 343(a) "where challenged conduct is expressly required or permitted by FDA regulations." *Reynolds*, 2015 WL 1879615, at *12.

Instead, "Congress presumably chose to include § 343(a) in the statutory scheme in order to allow the FDA to target specific false or misleading labels without having promulgated regulations that address the specific false or misleading aspect of the particular label." *Zupnik v. Tropicana Products, Inc.*, No. CV 09-6130 DSF RZX, 2010 WL 6090604, at *2 (C.D. Cal. Feb. 1, 2010). "Because Congress has also allowed states, at the very least, to pass statutes identical to § 343(a), a private party equipped with a private right of action under state law is able to sue to enforce a state statute identical to § 343(a), just as the FDA would be able to sue to enforce § 343(a) itself." *Id.*

In this case, "Plaintiffs do not challenge any statements within the Nutrition Facts box. Nor do Plaintiffs challenge the method Defendant uses to calculate the amount and percentage of protein. Nor do Plaintiffs challenge the quality of protein in Cheerios Protein or whether it is a 'good source' within the federal regulatory definition." Opp'n at 5. These claims would be governed by specific federal regulations and therefore could not form the basis of a claim under § 343(a).

Defendant argues that the "Cheerios Protein" name is also governed by a specific federal regulation and, in particular, is a permissible implied nutrient content claim under 21 C.F.R. § 101.13(i)(1). That regulation provides that, except as provided in sections not applicable here:

> the label or labeling of a product may contain a statement about the amount or percentage of a nutrient if: (1) The use of the statement on the food implicitly characterizes the level of the nutrient in the food and is consistent with a definition for a claim, as provided in subpart D of this part, for the nutrient that the label addresses. Such a claim might be, "less than 3 g of fat per serving[.]"

7

This Court disagrees. "Cheerios Protein" is not similar to a claim of "less than 3 g of fat per serving" because it does not imply that the product contains any certain "amount or percentage of a nutrient." Moreover, although Defendant characterizes the name "Cheerios Protein" as a "good source claim," Tr. at 15:18-19, the regulation governing such claims applies only to the use of the words "good source," "contains," or "provides," 21 C.F.R. § 101.54(c) – none of which is present here. The Court therefore finds that § 101.13(i)(1) does not regulate the name "Cheerios Protein."

As discussed above, the Court also disagrees with Plaintiffs and concludes that 21 C.F.R. §§ 101.18(b) and 102.5(c) do not govern the "Cheerios Protein" name. Thus, the parties have presented no regulation that governs Plaintiffs' challenges in this case, and the Court finds that Plaintiffs' claims fall under the catch-all provision of the NLEA, 21 U.S.C. § 343(a)(1). The claims are not preempted, and Defendant's motion to dismiss on that basis is DENIED.

## II. Reasonable Consumer Standard

Defendant next moves to dismiss Plaintiffs' claims on grounds that the Cheerios Protein labels are not likely to deceive a reasonable consumer. The parties correctly agree that this is the governing standard for both Plaintiffs' California and New York claims. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (California claims); *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007) (New York claims).

Granting a motion to dismiss is appropriate only in "the rare situation" where "the advertisement itself [makes] it impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived." *Williams*, 552 F.3d at 939. This is not such a situation. Although Cheerios Protein's sugar content and the word "sweetened" are both reflected on the front of the box, they are less prominent and in a smaller font than other components of the label, including the "Cheerios Protein" name and the number of grams of protein in each serving. Likewise, even if sugar content is accurately displayed in the Nutrition Facts box, that does not mean that the labeling as a whole cannot be misleading.

8

The Ninth Circuit has explained that reasonable consumers should not "be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Id.* While the Court is skeptical that a reasonable consumer would be misled by the labeling of Cheerios Protein, it cannot say, construing the allegations in a light most favorable to Plaintiffs, that it would be impossible for Plaintiffs "to prove that a reasonable consumer was likely to be deceived." *Id.* Accordingly, Defendant's motion to dismiss on this basis is DENIED.

### III. "Great Start" and "Fuel Up" Claims

Next, Defendants seek dismissal of two sets of Plaintiffs' claims on grounds that they are non-actionable puffery: first, Plaintiffs' claims based on statements on the package that say, "a great start to your day," "start your school day right," and "kick-start your day," with "appealing photographic images depicting healthy and successful kids and parents," Compl. ¶¶ 40-41 ("Great Start" claims); and, second, "Fuel Up" advertising, including an ad in which "celebrity NASCAR driver Austin Dillon and team, swathed in Cheerios Protein garb, strap a child into a Cheerios Protein stock car, race him to school where he is fed Cheerios Protein pit-stop style, and then leave him 'fueled up' and ready to learn," *id.* ¶ 53 ("Fuel Up" claims).

Statements are non-actionable puffery if they involve "general assertions of superiority rather than factual misrepresentations." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246 (9th Cir. 1990). The Ninth Circuit has concluded that a claim that a product "is 'nutritious,' were it standing on its own, could arguably constitute puffery, since nutritiousness can be difficult to measure concretely." *Williams*, 552 F.3d at 939 n.3. The court nonetheless "decline[d] to give [the defendant] the benefit of the doubt by dismissing the statement as puffery" because the "statement certainly contributes . . . to the deceptive context of the packaging as a whole." *Id.* Likewise, another judge in this district ruled that the term "wholesome" "arguably *could* mislead a reasonable consumer," and therefore "cannot be deemed to constitute non-actionable

puffery" on a motion to dismiss. *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1126 (N.D. Cal. 2010). The same was true of a "smart choices made easy" decal and "photographic depictions of oats, nuts, and children in soccer uniforms." *Id.* ("[A] determination of whether or not the decal is non-actionable owing to its status as either true or harmless puffery cannot be determined on this motion [to dismiss]. . . . Taking plaintiffs' allegation that trans fats are not safe in any amount as true, and crediting the inference plaintiffs draw from the box (that is, that active, healthy children are fueled with Chewy Bars), the Court cannot resolve at this juncture the issue of whether or not a reasonable consumer might be duped by these depictions.").

The Court finds these cases to be persuasive. Plaintiffs allege that Cheerios Protein contains more than the amount of sugar per serving recommended for children's consumption by the Federal Trade Commission, Centers for Disease Control and Prevention, and the United States Department of Agriculture, Compl. ¶¶ 45-46; that "added sugar in processed foods has substantially contributed" to a host of health problems, *id.* ¶ 49; and that the "implied claims of healthfulness on the Cheerios protein label" are therefore misleading, *id.* ¶ 51. The statements challenged in the "Great Start" claims arguably contribute to the alleged "deceptive context of the packaging as a whole," *Williams*, 552 F.3d at 939 n.3, and the Court does not find, at this stage of the proceedings, that they are so general as to be unable to mislead a reasonable consumer. The motion to dismiss these claims as mere puffery is therefore DENIED.

However, the Court finds the "Fuel Up" claims to be too general to constitute an actionable statement. The advertisement's claims that eating Cheerios Protein is akin to "fueling up" a race car driver are "so exaggerated as to preclude reliance by consumers," *Cook, Perkiss & Liehe, Inc.*, 911 F.2d at 246 (citation omitted), and "a reasonable consumer would not interpret the statement as a reliably factual claim." *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999). These claims are also subject to dismissal because Plaintiffs did not plead reliance on the "Fuel Up" advertisement – an argument raised by Defendant and ignored by Plaintiffs in their

opposition. *See Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1143 (N.D. Cal. 2013) ("California law requires UCL plaintiffs to plead injury and reliance."). The Court therefore GRANTS the motion to dismiss the "Fuel Up" claims without leave to amend.

## IV. Injunctive Relief

Finally, Defendant argues – in a footnote – that Plaintiffs lack standing to seek injunctive relief because they "have not alleged anywhere in the Complaint that they intend to purchase Cheerios Protein in the future." Mot. at 24 n.10.[3] "A footnote is the wrong place for substantive arguments on the merits of a motion." *First Advantage Background Servs. Corp. v. Private Eyes, Inc.*, 569 F. Supp. 2d 929, 935 (N.D. Cal. 2008). Nonetheless, the Court considers this argument since Plaintiffs had a fair opportunity to respond and did, in fact, address the merits in their opposition.

This issue was recently addressed in detail by another court in this district, and the Court finds that decision persuasive. *See Anderson v. Seaworld Parks & Entm't, Inc.*, Case No. 15-cv-02172-JSW, 2016 WL 4076097, at *5-9 (N.D. Cal. Aug. 1, 2016). Like that court, this one "is unwilling to hold, as a matter of law, that a plaintiff could never pursue a claim for prospective injunctive relief under the UCL or the [False Advertising Law] merely because the plaintiff now knows the truth about the alleged misrepresentation." *Id.* at *7. However, the Court agrees with "the majority view . . . that a plaintiff must allege the intent to purchase a product in the future in order to have standing to seek prospective injunctive relief." *Id.* at *6 (collecting cases); *see also Lilly v. Jamba Juice Co.*, No. 13-cv-02998-JST, 2015 WL 1248027, at *3-5 (N.D. Cal. Mar. 18, 2015) ("[A] willingness to consider a future purchase is sufficient."). Plaintiffs have not

---

[3] At oral argument, Defendant's counsel asserted that he placed this argument in a footnote "because of space limitations." Tr. at 16:11-12. This is disingenuous. Civil Local Rule 7-2(b) allows for 25 pages for motion papers. The 25th page of Defendant's motion contained only the date and signature line, and the six lines of text in the footnote could easily have been incorporated into the main body of the motion without exceeding the page limits. Moreover, it is impermissible to use footnotes as an attempt to get around page limits.

done so here, but counsel indicated at oral argument that Plaintiffs might be able to cure this deficiency with leave to amend.  Defendant's motion to dismiss is therefore GRANTED without prejudice.

**CONCLUSION**

For the reasons discussed above, Defendant's motion to dismiss is GRANTED IN PART and DENIED IN PART.  The motion is GRANTED with prejudice as to the "Fuel Up" claims and GRANTED without prejudice as to the injunctive relief claims.  It is DENIED in all other respects.

Plaintiffs shall file an amended complaint on or before **August 24, 2016**.  Failure to do so will result in dismissal of the injunctive relief claims with prejudice.

The parties shall meet and confer and file a joint case management statement on or before **September 12, 2016**, and appear for a case management conference on **September 19, 2016, at 1:30 PM**.

**IT IS SO ORDERED.**

Dated:   08/10/16                             _____
                                              THELTON E. HENDERSON
                                              United States District Judge